UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED

08 JUL 28 AM 10:57

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> Jesus ROSALES-Contreras, <br> Cristian Alan LOPEZ-Graciano <br><br> Defendant(s) | Magistrate Case No. <br><br> COMPLAINT FOR VIOLATION OF: <br><br> Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii) <br> Transportation of Illegal <br> Aliens <br><br> '08 MJ 2278 |

The undersigned complainant, being duly sworn, states:

On or about **July 25, 2008**, within the Southern District of California, defendants **Jesus ROSALES-Contreras and Cristian Alan LOPEZ-Graciano** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Blancalisa SANDOVAL-Deleon, Maria Refugio RIVERA-Barron, Veronica Patricia LOPEZ-Hernandez, Arturo Eustacio TORRES-Montanez, Eduardo LOPEZ-Hernandez, and C.T.L(a juvenile)** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

_____
SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **28th** DAY OF **JULY 2008**

_____
Jan M. Adler
UNITED STATES MAGISTRATE JUDGE

**CONTINUATION OF COMPLAINT:**
Jesus ROSALES-Contreras
Cristian Alan LOPEZ-Graciano

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that , **Blancalisa SANDOVAL-Deleon, Maria Refugio RIVERA-Barron, Veronica Patricia LOPEZ-Hernandez, Arturo Eustacio TORRES-Montanez, Eduardo LOPEZ-Hernandez,** and **C.T.L(a juvenile)** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On July 25, 2008, North County Smuggling Interdiction Group (NCSIG) Agents were working smuggling interdiction along the Interstate 5 Freeway in the San Clemente area of operations. Agent N. Gonzalez was observing northbound vehicle traffic in a stationary position north of Oceanside Harbor Drive. At approximately 6:40 p.m., a green Ford Mustang passed his position. As the Mustang passed, Agent Gonzalez observed a driver, front seat passenger and a rear seat passenger. All subjects were sitting upright and stiff, as though they were tense. This posture is common with individuals smuggling aliens and aliens being smuggled for fear of being identified and apprehended. Agent Gonzalez decided to follow the Mustang to investigate further.

Agent Gonzalez caught up to the Mustang. The Mustang was in the number two lane of traffic and Agent Gonzalez was in the number four lane of traffic. Agent Gonzalez looked over at the occupants, but the occupants didn't look over at the Agent. At that moment, a white Chevrolet Silverado, with a male driver and female front seat passenger, pulled up in the number three lane of traffic and decelerated, effectively blocking Agent Gonzalez' view of the Mustang. This was suspicious driving behavior on part of the Silverado because there was no traffic in front of him that would cause him to slow so abruptly. Agent Gonzalez suspected that the Silverado was possibly associated with the Mustang in smuggling illegal aliens. To Agent Gonzalez, the driving behavior exhibited by the operator of the white Silverado appeared to be an attempt to block Agent Gonzalez' view of the Mustang. The Silverado then paced Agent Gonzalez' vehicle. At this point the Mustang began to accelerate.

Noticing this, Agent Gonzalez slowed down to get behind both vehicles to run registration checks on them before the Mustang could get out of view. As the Mustang pulled away Agent Gonzalez stayed with the Silverado. The Mustang stayed in view of the Silverado the whole time. Agent Gonzalez radioed ahead to other Agents to advise them of the vehicles behavior. Agents, M. McDermott, H. Martinez, K. Martinez, and R. Alderman, responded and staged at various points along the I-5 to assist. San Clemente Agents B. Ortega and C. Tobin, who were driving separate marked service vehicles, also responded and were waiting at the I-5 Checkpoint to assist.

As Agent Gonzalez followed the Silverado, he noticed that it would change lanes to coincide with the Mustang's lane changes. This also indicated that both vehicles were associated. Because of the above suspicious behavior of both vehicles and the occupants, Agent Gonzalez suspected they were being used to transport illegal aliens and requested that they be stopped for further investigation. As the Mustang and Silverado passed the checkpoint, Agent Ortega positioned herself behind the Mustang and Agent Tobin positioned himself behind the Silverado. SIG Agents were positioned at various points in traffic near both suspected vehicles.

**CONTINUATION OF COMPLAINT:**
**Jesus ROSALES-Contreras**
**Cristian Alan LOPEZ-Graciano**

Agent Ortega activated the emergency equipment on her marked Border Patrol sedan and the Mustang stopped north of the I-5 checkpoint at a location known as the Power-Lines. Agent Ortega approached the Mustang and identified herself to the three occupants as a Border Patrol Agent and performed an immigration inspection. All three including the driver later identified as the defendant **Jesus ROSALES-Contreras** claimed to be citizens of Mexico and each stated that he was not in possession of any immigration documents that give him the right to enter or remain in the United States legally. All three were arrested and transported to the San Clemente Border Patrol Station for processing and further investigation. The Mustang was also transported to the San Clemente Station.

After a request from Agent N. Gonzalez to make a vehicle stop on a white Chevy pick-up truck, the truck passed Agent Tobin's position and he noticed that the driver stiffened in his posture and slowed the vehicle down. Agent Tobin pulled in behind the truck and activated the emergency lights and siren on his marked service sedan. The vehicle did not yield. Agent Tobin notified the station that the vehicle was not yielding. At this time Agent Tobin pulled along the side of the truck and noticed that the driver would not look at him and stared straight ahead. Acting Supervisory Border Patrol Agent M. Bowen advised Agent Tobin that SIG Agents in unmarked vehicles were going to take over the pursuit as soon as they could position themselves. The vehicle eventually yielded to the right hand shoulder approximately one half mile north of the Cristianitos on ramp to the I-5 N/B. The distance it took for the Silverado to stop was approximately three miles.

Agent Tobin and SIG Agent K. Martinez approached the Silverado. The driver, later identified as the defendant **Cristian Alan LOPEZ-Graciano**, resisted the agents by pulling away from them while he was in his seat. He was pulling his arms in toward his body and stiffing up. The agents eventually were able to get LOPEZ out and put hand cuffs on him. LOPEZ continued to be resistant up until he was placed in the service vehicle.

The agents looked in the Silverado and noticed the front seat passenger and that the rear seat was removed. In the place where the rear seat used to be were three occupants huddled together. There were a total of four females left in the Silverado. The agents questioned all five occupants about their citizenship and immigration status in the United States. All five occupants claimed to be citizens of Mexico and not in position of any immigration documents that give them the right to be in or remain in the United States. All five were taken to the San Clemente Border Patrol Station for processing and further investigation. The Silverado was also transported to San Clemente waStation.

CONTINUATION OF COMPLAINT:
Jesus ROSALES-Contreras
Cristian Alan LOPEZ-Graciano

### DEFENDANT STATEMENT (Jesus ROSALES-Contreras):

The defendant was advised of his Miranda Rights and indicated that he understood his rights and was willing to make a statement. The defendant stated that he was a citizen and national of Mexico without valid immigration documents to enter or remain within the United States legally.

When questioned as to today's event, ROSALES stated that he crossed illegally through the hills of Tecate, Mexico 5 month ago. ROSALES stated that he lives in Spring Valley, California. ROSALES stated that this is the first time he has smuggled aliens. When asked where he was taking the smuggled aliens ROSALES stated that he was to take them two exits past the San Clemente, California Checkpoint, and was to then transfer them to the white truck his friend "Pollo" was driving. ROSALES was asked what "Pollo's" real name is ROSALES stated that he only knows him as "Pollo." "Pollo" was later identified as defendant Cristian Alan LOPEZ-Graciano.

When asked if he knew that it was illegal to smuggle bodies past the Checkpoint, ROSALES stated he knew. When asked how he knew where to take the smuggled aliens, ROSALES responded that he was in radio (BOOST) contact with "Pollo" until "Pollo" ran out of credits.

ROSALES was then asked whether he could id "Pollo," if shown a picture. ROSALES was then shown a series of Polaroid photographs numbered 1-8. ROSALES identified photo number 5 as the person he knows as "Pollo." Photograph number 5 depicts the Defendant Cristian Alan LOPEZ-Graciano.

### DEFENDANT STATEMENT (Cristian Alan LOPEZ-Graciano):

The defendant was advised of his Miranda Rights and indicated that he understood his rights and was willing to make a statement without an attorney present. The defendant stated that he was a citizen and national of Mexico without valid immigration documents to enter or remain within the United States legally.

When questioned as to today's event, LOPEZ admitted to having been arrested transporting illegal aliens. When asked as to how much he was to receive for transporting LOPEZ stated that he was given what ever the people he worked for wanted to give him. When asked where he was taking the bodies LOPEZ stated that he was to take them to Los Angeles, California where he was to exchange them for money from their families. Agent Martinez then asked LOPEZ why the load was split into two separate vehicles. LOPEZ responded that the driver of the green car asked if he could he help because he needed money.

### MATERIAL WITNESSES STATEMENTS:

Material Witnesses **Blancalisa SANDOVAL-Deleon, Maria Refugio RIVERA-Barron, Veronica Patricia LOPEZ-Hernandez, Arturo Eustacio TORRES-Montanez and Eduardo LOPEZ-Hernandez,** and stated that they are citizens and nationals of Mexico illegally present in the United States. They stated that they did not have any immigration documents allowing them to be in the United States legally. They stated that arrangements had been made in Baja California, Mexico to be smuggled into the United States. All the material witnesses stated that they were to pay between $500.00 to $3,000.00 U.S. dollars to be smuggled to various parts of California.